IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 13-cv-00767-LTB

RANDALL LOGAN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

    Defendant.
_____

ORDER
_____

    Plaintiff Randall Logan appeals the final decision of the Commissioner of the Social Security Administration ("SSA") denying him disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have considered the briefs [Docket Nos. 13, 14, 15] and the administrative record [Docket No. 10] ("AR"). Oral argument would not materially assist me in determining this appeal. Mr. Logan raises two arguments. First, he argues that the administrative law judge ("ALJ") improperly considered his job as an executive administrative assistant as past relevant work because he did not work at the job long enough to learn how to do it. Mr. Logan says SSA's "grid rules" require SSA to find him disabled and award him benefits if that job is excluded from consideration. Second, Mr. Logan contends the ALJ inadequately explained his conclusion that Mr. Logan does not meet the criteria of Listing 1.04, relating to spinal disorders, and asks me to remand this case for further analysis on that point. As explained below, neither argument is availing. Accordingly, I AFFIRM.

# I. Background

## A. Procedural History

Mr. Logan filed his claim for disability benefits with SSA on March 19, 2010, alleging he became disabled on October 31, 2008. AR 17. SSA denied his claim initially on September 17, 2010. *Id.* Mr. Logan requested a hearing. AR 145. The hearing took place on December 14, 2011 before an ALJ. AR 17. On January 6, 2012, the ALJ denied Mr. Logan's claim, concluding that Mr. Logan was not disabled within the meaning of the Social Security Act. AR 29. On February 29, 2012, Mr. Logan requested that the SSA's Appeals Council review the ALJ's decision. Ex. F to Compl. [Docket No. 1-8]. On January 25, 2013, the Appeals Council denied review, making the ALJ's decision the final decision of the SSA. Ex. A to Compl. [Docket No. 1-3]; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On March 25, 2013, Mr. Logan timely filed the instant appeal pursuant to 42 U.S.C. § 405(g).

## B. Mr. Logan's Relevant Work Experience

On the "Work History Report" he submitted to SSA, Mr. Logan listed various jobs he held in the fifteen years leading up to the date he alleges he became unable to work. AR 232. One of these jobs was "Bethany Baptist Office Administrator," which Mr. Logan wrote he held from "10/99" to "10/00." *Id.* Mr. Logan said he worked at this job four to eight hours per day, five-and-one-half days per week. AR 238. In his "Disability Report-Adult," however, Mr. Logan said he worked at a "church" from "1998" to "2000" for four hours per day, five days per week. AR 200. Mr. Logan does not dispute that this is a reference to his job at Bethany Baptist Church. In addition, in a letter to SSA requesting an "on the record favorable decision," Mr.

Logan's counsel said Mr. Logan worked at the church from November 1999 to November 2000. AR 262.

At the hearing, vocational expert Martin Ralor classified the church position as the occupation of "executive administrative assistant" or "secretary" in the Department of Labor's *Dictionary of Occupational Titles* ("DOT"), which assigns the job a "specific vocational preparation" level of six (6). Mr. Ralor testified that the position was part of Mr. Logan's "past relevant work." AR 68-69. Mr. Logan's counsel did not ask Mr. Ralor any questions about whether Mr. Logan had worked at the church long enough for it to be included in his past relevant work or otherwise raise this issue at the hearing. Mr. Ralor then testified that someone of Mr. Logan's age, education, and work experience who has a certain residual functional capacity (comprising specific abilities to push, pull, sit, stand, etc., that are not at issue in this appeal) could do the job. AR 69-70.

**C.  Mr. Logan's Claimed Injuries and Relevant Medical History**

Mr. Logan sought benefits for several conditions below but appeals only with respect to his "severe lumbar impairment emanat[ing] from a long history of back issues." Pl. Br. 7 [Docket No. 13]. The following facts relate to that condition. Mr. Logan's back issues began in 1994, when doctors diagnosed him with a herniated L5-S1 disc in his spine that was likely compressing the left L5 nerve root. AR 332. Doctors removed the disc and performed a laminectomy. *Id.* On October 31, 2008, Mr. Logan was working as a driver for a private delivery company, where his responsibilities included "delivering Big O Tires." AR 233. In the course of loading a truck, he "was trying to climb up a stack of tires [and] fell backwards 12 feet, injuring his left shoulder and elbow, low back, and right knee." AR 618.

Mr. Logan did not seek medical treatment until November 13, 2008, when he presented to James Fox, M.D., at Concentra Medical Center. AR 274. While Mr. Logan's "biggest" complaint at that time was pain in his left elbow, he also complained of pain in his "upper back/[left] thoracic" area and lower back. *Id.* On examination, Dr. Fox noted "[m]ild focal tenderness of the left back, the ribs and the scapula" but "[n]o swelling" and "full range of motion." *Id.* Dr. Fox told Mr. Logan to start physical therapy. AR at 274-75. Mr. Logan did so a few days later. AR 275. He complained to his therapist of "nerve pain" in his left leg. AR 277. At another session two days later, the therapist noted Mr. Logan "has limited spinal mobility." AR 281. On November 20, 2008, Mr. Logan saw Dr. Fox again. AR 284. On examination, Mr. Logan demonstrated full range of motion of the lumbar and thoracic spine and a normal gait, normal sensation, and normal neurological findings. *Id.* Dr. Fox noted tenderness of the "midline L5-spine" but added that Mr. Logan had symmetric reflexes in the lumbar area. *Id.* Dr. Fox diagnosed Mr. Logan with back pain, thoracic strain, and lumbar pain that day. *Id.*

On November 26, 2008, John Sacha, M.D., a rehabilitation specialist, saw Mr. Logan. Mr. Logan complained of pain in his back; pain, tingling, and numbness in both legs; and weakness in both feet. AR 294. On examination, Mr. Logan had "some paraspinal spasm" and an equivocal straight leg raise on the left side with "some pain localized to the back and buttocks." AR 296. Mr. Logan also displayed "some mild pain behaviors" and decreased sensation in a patchy area on both of his feet. AR 295. Dr. Sacha ordered an MRI. He noted the MRI showed a disc protrusion at the L4-L5 level with some foraminal narrowing. AR 315. He also noted that the MRI showed marked degenerative changes at the L5-S1 level but no canal or

4

foraminal narrowing.  *Id.*  Dr. Sacha noted that there was no disc bulge, herniated nucleus, or fracture.  *Id.*

On December 10, 2008, Mr. Logan saw Dr. Sacha's colleague, Glenn Petersen, P.A., who noted tenderness and pain in the lumbar and thoracic spine.  AR 424.  He also noted weakness in the lower extremities due to spine pain as well as a positive straight leg raise.  *Id.*  On December 12, 2008, Mr. Logan saw another of Dr. Sacha's colleagues, Allison Fall, M.D., for a nerve conduction study of his lower extremities.  AR 308.  Mr. Logan continued to complain of low back pain and left leg numbness.  *Id.*  He said his right leg felt "as if it is going to fall asleep" and reported a feeling of "burning on his thighs like acid is being poured on them."  *Id.*  The study, however, was normal in all respects.  AR 309.  Dr. Fall concluded there was no evidence of acute or chronic radiculopathy, peripheral neuropathy, or other abnormality.  AR 310-11.

On January 15, 2009, Mr. Logan saw Dr. Sacha again.  AR 367.  Dr. Sacha noted a diagnosis of lumbosacral radiculopathy.  *Id.*  Dr. Sacha gave Mr. Logan an epidural injection and performed a nerve block.  *Id.*  Mr. Logan reported 80-90% relief of his low back pain and leg pain.  *Id.*  At a visit a week later, Mr. Logan reported that the injection had given him complete temporary relief and 50% lasting relief of his low back symptoms.  AR 369.  Nevertheless, at a physical therapy session on January 28, 2009, the therapist noted that Mr. Logan presented with "[r]educed thoracic mobility" and "[r]educed cervical and thoracic joint mobility."  AR 373.

On February 25, 2009, Dr. Sacha saw Mr. Logan to assign impairment ratings for Mr. Logan's workers' compensation claim arising out of the tire incident.  AR 403.  On examination, Dr. Sacha noted that sensation was "decreased in a patchy non-dermatomal distribution in both

feet, which is either an L5 or S1 distribution." *Id.* He also noted that Mr. Logan "has some paraspinal spasm with straight leg raise" and reiterated his diagnosis of lumbosacral radiculopathy. AR 404.

On March 11, 2009, Dr. Sacha reported that Mr. Logan had shown up to an appointment and accused Dr. Sacha of not being "on his side" due to the impairment ratings Dr. Sacha assigned for the workers' compensation claim. AR 410. Dr. Sacha summed up his assessment of Mr. Logan's condition: "With respect to the lumbar spine, at this point this gentleman's findings are minimal. He has no objective findings on evaluation. He has an MRI with minimal degenerative changes without significant canal or foraminal stenosis and had an EMG [which includes the nerve conduction study] that was completely normal with no evidence of acute or chronic nerve damage . . . I do feel the back is at maximum medical improvement." AR 409. Mr. Logan refused to undergo a functional capacity evaluation at this appointment. *Id.*

On June 25, 2009, Mr. Logan saw Darrell Quick, M.D., a doctor retained by the state to do an independent medical examination for the workers' compensation claim. AR 329. Mr. Logan said he had a pain level of 8/10 in the lumbar area with radiation to both legs. *Id.* On examination, the lumbar spine was moderately tender to palpation. AR 331. Straight leg raise tests were negative as to both legs, and neither leg showed signs of atrophy. *Id.* On January 4, 2010, Mr. Logan saw John Aschberger, M.D., for pain management. AR 548. Dr. Aschberger noted a positive seated left straight leg raise due to buttock and posterior thigh pain. *Id.* On July 21, 2010, Dr. Quick did a follow-up examination. Mr. Logan complained of "extensive" pain in his thoracic and lumbar spine area that "refers into both legs, feet and ankles." AR 603. On examination, Dr. Quick again noted tenderness of the lumbar spine. AR 604. In contrast with

the prior examination, the straight leg raise for both legs was limited by lumbar pain. *Id.* Dr. Quick diagnosed Mr. Logan with "lumbar contusion, with persistent multifactorial lumbar pain." AR 606. He concluded that Mr. Logan's lumbar region had reached "maximum medical improvement." AR 607.

Shortly after filing his claim with SSA on March 19, 2010, Mr. Logan submitted his Function Report and Personal Pain Questionnaire. He reported "constant pain over 70% of my body" and that he "can't sit for long," "stand for long," or "l[ie] in bed too long." AR 248-49. He also said his abilities to lift, squat, bend, stand reach, walk, sit, kneel, and climb stairs are affected. AR 245. In his lumbar area, Mr. Logan reported [s]ometimes aching and throbbing" and "[s]ometimes sharp and stabbing pain" of 5 to 10 on a 10-point scale. AR 250. From the waist down he reported pain of an "aching, throbbing, burning stabbing, [and] shooting" nature, which he rated at 7 to "above 10" on a 10-point scale. Despite the pain, he reported being able to dust, vacuum, do laundry, walk his dog, and shop for groceries. AR 240-43. He likewise reported being able to pay bills, count change, handle a savings account, go to church each week, and attend gatherings of family and friends two or three times a month. AR 243-44. Mr. Logan reported taking medications including extended release morphine, gabapentin, and Flexeril for his pain and said that they were at least somewhat effective. AR 248.

On August 18, 2010, Mr. Logan submitted to a physical examination with consultative physician Richard Carson, M.D., in connection with the instant claim. AR 618. Dr. Carson noted Mr. Logan's lumbar spine was somewhat tender on palpation. AR 619. In addition, Dr. Carson noted positive straight leg raises "supine 70 degrees bilaterally," although the straight leg raises were negative in the sitting position. AR 620. He also noted that Mr. Logan had full

range of motion of his cervical spine but noted some limitations with regard to his lumbar spine. *Id.* He concluded that "the significant portion of the patient's discomfort is myofascial." *Id.*

At the December 14, 2011 hearing, Joseph Jensen, M.D., an orthopedist, offered expert testimony based on his review of Mr. Logan's medical records. He testified that Mr. Logan's musculoskeletal impairments do not meet the impairments described in SSA's Listing 1.04, relating to disorders of the spine. AR 39-40. He said this is because "[t]here's not a significant straight leg raising" or "any neural anatomical sensory or motor loss in the lower extremities." AR 40. Mr. Logan's counsel pointed Dr. Jensen to the medical record from Dr. Carson's examination that mentions a positive straight leg raise test in the supine position and asked Dr. Jensen if the record would change his opinion. *See* AR 41-42, 620. Dr. Jensen said his opinion would not change, noting that the test had been negative in the sitting position and that the test was "supine at 70" degrees, which is "the upper limit" and only indicates "some back pain." AR 42. Mr. Logan's counsel did not ask any other questions of Dr. Jensen regarding his conclusion that Mr. Logan did not meet Listing 1.04.

## II. Legal Standards

### A. SSA's Five-Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is "disabled" under Title II of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established the following five-

step sequential evaluation process for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If he is, benefits are denied and the inquiry stops. 20 C.F.R. § 404.1520(b). At step two, SSA asks whether the claimant has an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If he does not, benefits are denied and the inquiry stops. If he does, SSA moves on to step three, where it determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them should be determined conclusively disabled without regard to the claimant's age, education, or work experience. *Id.* § 404.1520(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC"), *i.e.,* what he is still able to do despite his impairments, and asks whether the claimant can do any of his "past relevant work" given that RFC. *Id.* § 404.1520(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows him to do other work in the national economy in view of his age, education, and work experience. *Id.* § 404.1520(g). At this step, the SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal,* 331 F.3d at 760.

**B. Standard for Reviewing SSA's Decision**

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000). With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater,* 92 F.3d 1017, 1019 (10th Cir. 1996). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon [this] court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). I may not re-weigh the evidence or substitute my judgment for that of the ALJ. *See Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).

### III. The ALJ's Decision

The ALJ followed the five-step analysis outlined above. At step one, the ALJ found that Mr. Logan has not engaged in substantial gainful activity since the alleged onset date of his

condition, October 31, 2008. AR 19. At step two, the ALJ found several severe impairments, including, as relevant here, "residual pain status-post lumbar laminectomy in 1994." *Id.* At step three, the ALJ concluded that Mr. Logan did not meet or equal any of the listed impairments, included Listing 1.04, which is used in evaluating "disorders of the spine" such as herniated discs, spinal stenosis, spinal arachnoiditis, and osteoarthritis, resulting in compromise of a nerve root or the spinal cord. AR 20-21; 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ concluded that Mr. Logan did not meet this listing because there was "no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss or muscle weakness." AR 21. Because he concluded Mr. Logan did not meet or equal a listed impairment, the ALJ proceeded to step four, at which point he made findings with regard to Mr. Logan's RFC and past relevant work. AR 21-29. The ALJ explained that the "claimant is capable of performing past relevant work as an executive administrative assistant (DOT #201.362-030) which is a skilled job with a Specific Vocational Preparation (SVP) level of 6 and performed at sedentary exertion. This job meets the criteria for past relevant work because it was performed within the last 15 years, performed long enough to learn the job, and the work was done at a level of substantial gainful activity." AR 29. Based on this conclusion, the ALJ determined that Mr. Logan was not disabled. The ALJ did not proceed to step five.

### IV. Analysis

I first address the alleged error in the ALJ's analysis at step four—his consideration of Mr. Logan's job at Bethany Baptist Church as past relevant work—because Mr. Logan seeks an outright reversal of the ALJ's decision and an award of benefits on this basis. I then address whether the ALJ erred at step three in concluding that Mr. Logan did not meet Listing 1.04,

which Mr. Logan contends requires a remand for further analysis.

## A. SSA's Consideration of Bethany Baptist Church Position as Past Relevant Work

As noted, if a claimant's RFC allows him to do any of his "past relevant work," he is determined to be "not disabled" at step four. 20 C.F.R. § 404.1520(e). "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560. Mr. Logan contends that the ALJ erred as a matter of law in considering his work at Bethany Baptist Church—which Mr. Logan does not dispute was properly classified as the occupation of "executive administrative assistant" or "secretary"—as past relevant work because he did not work at that job long enough to learn to do it. Mr. Logan points out that the DOT lists the occupation as having a specific vocational preparation level of six (6), which means a typical worker needs "over 1 year up to and including 2 years" to "learn the techniques, acquire the information and develop the facility needed for average performance of a specific job-worker situation." DOT, App. B. Mr. Logan contends that, because he only worked at the church for, at most, one year, he did not work there long enough to learn how to do the job and, accordingly, the ALJ improperly considered it as past relevant work. He says that he testified at the hearing that he only worked at the church for ten months. He also argues that the fact he only worked at the church on a part-time basis bolsters his argument.

The evidence in the record provides a substantial basis for the ALJ's conclusion that Mr. Logan worked as an executive administrative assistant long enough to learn to do the job. As the government suggests, the statement in Mr. Logan's Work History Report indicating he worked at the church from October 1999 to October 2000 and the letter from Mr. Logan's counsel to SSA

indicating he worked there from November 1999 to November 2000 can reasonably be construed to mean that Mr. Logan worked at the church for slightly more than one year. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."). For example, Mr. Logan could have begun working in early October 1999 and stopped working in late October 2000. Even if this were not so, the Disability Report-Adult, on which Mr. Logan indicated he worked at the church from 1998 to 2000, certainly supports the conclusion that he worked at the church for more than one year and thus long enough to learn to do the job pursuant to the job's SVP level.

Contrary to Mr. Logan's suggestion, this evidence was not contradicted at the hearing. A review of the hearing transcript shows that Mr. Logan did not testify that he only worked at the church for ten months. Rather, he said, "I don't really recall what month I started in." AR 46. Moreover, the vocational expert, Mr. Ralor, testified at the hearing that the position of executive administrative assistant was part of Mr. Logan's past relevant work. AR 69. Mr. Logan's counsel did not question the basis for this conclusion, including its implicit assumption that Mr. Logan performed the job long enough to learn to do it.

Mr. Logan has not cited any authority for his argument that the SVP time for his job at the church should somehow be extended because he was working on a part-time basis, and the Court could find none. *See* DOT, App. B (SVP is based on "lapsed time" and "[l]apsed time is not the same as work time. For example, 30 days is approximately 1 month of lapsed time and not six 5-day work weeks, and 3 months refers to 3 calendar months and not 90 work days."). I also note that the claimant bears the burden of proof at step four. *Doyal*, 331 F.3d at 760.

Therefore, the onus was on Mr. Logan to come forward with proof to resolve any discrepancy about whether Mr. Logan worked at the church long enough to learn to do his job. *See also Cowan v. Astrue,* 552 F.3d 1182, 1188 (10th Cir. 2008) (while ALJ bears burden of properly developing record, in a counseled case "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored"); *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (noting that "claimants should not be permitted to scan the record for implied or unexplained conflicts" and "then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing"). As noted, Mr. Logan's counsel did not raise this issue at the administrative hearing.

Given my conclusion, I need not reach the government's contention that factors other than how long Mr. Logan worked at the church support the ALJ's conclusion. I also need not reach Mr. Logan's argument that SSA's "grid rules" would have mandated a finding of disabled if the ALJ had excluded the position of executive administrative assistant from Mr. Logan's past relevant work.

### B. SSA's Conclusion That Mr. Logan Does Not Meet Listing 1.04

Mr. Logan contends the ALJ did not adequately explain his conclusion at step three that Mr. Logan does not meet Listing 1.04. I disagree. The ALJ set forth the specific criteria he found lacking: "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss or muscle weakness." AR 21. The ALJ then identified the evidence upon which he relied, including conclusions reached by three different treating physicians who conducted two different tests—an MRI and a nerve

conduction study—and a physical examination of Mr. Logan.  First, the ALJ relied on Dr. Sacha's interpretations of Mr. Logan's MRI.  AR 21.  Dr. Sacha concluded that Mr. Logan's complaints were simply not borne out by the MRI scans, which showed only "minimal degenerative changes without significant canal or foraminal stenosis."  AR 409.  Second, the ALJ relied on Dr. Fall's impression of the nerve conduction study, which also found no objective evidence to corroborate Mr. Logan's complaints.  AR 21.  Dr. Fall said the study showed "no evidence of acute or chronic radiculopathy, peripheral neuropathy or other abnormality."  AR 311.  Finally, the ALJ relied on Dr. Fox's physical examination, which revealed full range of motion of the lumbar and thoracic spine and a normal gait, normal sensation, and normal neurological findings.  AR 21, 284.

Mr. Logan cites various symptoms and diagnoses from the medical records that he contends the ALJ "entirely ignored" and should be required to address on remand.  Mr. Logan notes a 1994 MRI showing marked degenerative changes and a herniated disc at the L5-S1 level likely compressing the L5 nerve root.  AR 332.  He also identifies notations of lumbosacral radiculopathy throughout the medical records.  AR 323, 332, 367, 383, 404.  In addition, Mr. Logan cites records noting limited spinal mobility and tenderness to palpation of the lumbar spine.  AR 281, 309, 323, 362, 604.  Finally, he notes references in the records to complaints of numbness radiating into both legs as well as decreased sensation in the feet.  AR 295, 296, 308, 329, 403, 424.

The ALJ's decision reflects that he gave due consideration to this evidence.  In his more fulsome step four analysis, the ALJ expressly acknowledged these symptoms and diagnoses.  *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) (rejecting argument that remand is

required "for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review"). For example, the ALJ noted Dr. Sacha's diagnosis of lumbosacral radiculopathy. AR 24. The ALJ also noted Mr. Logan's complaints of numbness and radiating pain in his legs, feet, and/or ankles. AR 23 (noting complaint that right leg feels like "it is going to fall asleep" and complaint that legs have burning feeling "like acid is being poured on them"); AR 25 (noting complaint of radiation to bilateral legs); AR 26 (noting complaint of "extensive" pain in lumbar spine area, radiating into both legs, feet, and ankles).

The ALJ's analysis reflects that he found the objective findings of Dr. Sacha, Dr. Fall, and Dr. Fox more persuasive than this evidence, particularly in view of Mr. Logan's demonstrated abilities. *See* AR 26 ("[I]n light of the repeated objective imaging findings of mild and minimal musculoskeletal abnormalities, the mild and minimal clinical findings on examination, his ability to do errands 2-3 times per week, his very adequate activities of daily living, and the complaints of severe pain inconsistent with observable and clinical findings, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully persuasive."); *id.* (noting Mr. Logan told doctor he had been walking up to 1.5 miles at a time and that this was "inconsistent with his assertions of severe pain and limitation").

I note that the ALJ found Mr. Logan's complaints about his pain and limitations to be doubtful because of several specific incidents, including when Mr. Logan refused to undergo a functional capacity evaluation for his workers' compensation claim and accused Dr. Sacha of not being "on his side." AR 24, 410. It is not for this Court to second-guess such credibility

determinations where, as here, the ALJ properly links them to the evidence. *Qualls*, 206 F.3d at 1372.  With respect to the 1994 MRI showing a compressed nerve root, I note that Mr. Logan underwent a laminectomy or laminotomy to alleviate the nerve root compression shortly after that MRI was taken, and that Mr. Logan "report[ed] resolution" as a result of the procedure.  AR 332, 607.  Therefore, it is understandable why neither Mr. Logan's doctors nor the ALJ considered this relevant evidence, particularly in view of the 2008 MRI showing mild and minimal abnormalities.  AR 409.

The ALJ's decision also noted the hearing testimony of Dr. Jensen, the expert orthopedist, that Mr. Logan's musculoskeletal impairments do not meet any of the listed impairments.  AR 28, 39-40.  At the hearing, Mr. Logan's counsel only asked Dr. Jensen about the requirement of a positive straight leg raise.  Counsel did not ask Dr. Jensen about any of the criteria of Listing 1.04 that the ALJ ultimately found lacking or how the notations in the records that he now cites might relate to those criteria.  AR 39-40.  As at step three, the claimant has the burden of proof at step four.  *Doyal*, 331 F.3d at 760.  And the burden is to show that all the criteria of the listing are met.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of [the] criteria, no matter how severely, does not qualify.").  The ALJ was entitled to rely on counsel to ask questions to explore Mr. Logan's entitlement to benefits under Listing 1.04.  *See Cowan*, 552 F.3d at 1188; *Carey,* 230 F.3d at 146-47.  As Dr. Jensen's testimony that Mr. Logan does not meet all of the requirements of Listing 1.04 was uncontroverted, it was certainly proper for the ALJ to rely on that testimony in reaching his decision. See *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (ALJ entitled to consider opinions of non-examining physicians).

In view of this evidence, the ALJ's detailed analysis, and my review of the record, I conclude that the ALJ's conclusion that Mr. Logan did not meet Listing 1.04 was supported by substantial evidence and that he adequately explained his reasoning. *See Clifton,* 79 F.3d at 1009-10 (record must demonstrate that ALJ considered all of the evidence, although ALJ is not required to discuss every piece of evidence).

## V.  Conclusion

For the foregoing reasons, SSA's decision is AFFIRMED.

DATED this   21st   day of November, 2014.

BY THE COURT:


  s/Lewis T. Babcock  
LEWIS T. BABCOCK, JUDGE